## CHICAGO, PEORIA & ST. LOUIS RAILWAY COMPANY, Respondent, v. BAY SHORE LUMBER CO., Appellant.

#### St. Louis Court of Appeals, May 25, 1909.

1. **PLEADING: Running Account: One Count.** In an action on a running account for various sums paid and charged by plaintiff for transporting fifteen carloads of lumber, such sums are properly embraced in one count.

2. **———: ———: Inconsistent Allegations: Oral Motion to Elect.** But even if the charges on each car did constitute a distinct cause of action, the different causes would be consistent with each other, and the oral motion, made after the trial was begun, to compel plaintiff to elect on which cause it would proceed was not timely made and was properly overruled.

3. **———: ———: Indefinite Allegations: Motion to Make Definite and Certain.** In an action by a carrier to recover freight charges, some of which were earned by it and the balance paid by it to connecting carriers, an objection to the petition on the ground it did not disclose what part of the sum demanded had been earned by plaintiff and what part thereof had been paid to the connecting carriers is not well taken. If defendant desired to know these facts, it should have moved to make the petition more definite and certain.

4. **———: Trial Practice: Evidence: Express Promise: Reasonableness of Charges Paid.** A petition which alleges that defendant requested plaintiff to forward carloads of lumber over its railroad and connecting railroads from East St. Louis to various points and directed plaintiff to pay the freight charges to said points, and promised to repay plaintiff all sums of money so paid out by it, counts on an express contract in respect of a promise by defendant to pay plaintiff, but not as to the amounts to be paid, the promise as to that being to pay what was reasonable; and evidence of the reasonableness of the charges so paid was not only competent but necessary.

5. **INSTRUCTIONS: Opposed to Theory of Party Asking It.** An instruction offered by defendant, which sought to impose on plaintiff the burden of proving a fact opposed to the entire theory of its case and contrary to the evidence it introduced, was properly refused.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellant.

(1) The motion to require plaintiff to elect upon which cause of action it would stand, should have been sustained. This motion was made before the introduction of any evidence, and at the conclusion of plaintiff's evidence. Zeideman v. Mososky, 118 Mo. App. 123; Otis v. Bank, 35 Mo. 128; State to use v. Davis, 35 Mo. 406; Childs v. Railroad, 117 Mo. 414; State v. Tittman, 103 Mo. 553. (2) There was a separate cause of action on each bill of lading. Each was a separate contract, just as much so as several promissory notes given at different times would each constitute separate causes of action. There should have been a separate count for each transaction. Alkire Gro. Co. v. Tagart, 60 Mo. App. 389; Harrison v. Hall, 8 Mo. App. 167; Foster-Cherry Com. Co. v. Davis, 115 Mo. App. 65; Williams v. Kitchen, 40 Mo. App. 604; Hoagland v. Railroad, 39 Mo. 457; State ex rel. v. Tittman, 103 Mo. 553; Brown v. Chadwick, 32 Mo. App. 615; Wacke v. Davis, 61 Mo. App. 524; Ring v. Jamison, 2 Mo. App. 584. (3) The plaintiff seeks to recover the amount paid to initial carrier, amount earned itself, and the amount paid to forwarding carrier on each of fifteen cars of lumber. All in one count, without setting out the amount paid to initial carrier, amount earned by plaintiff and amount paid to forwarding carrier. This it cannot do. (4) Plaintiff having sued upon an express promise to pay the amounts set out in the bill of particulars, and failing to plead a custom, could not show a custom that existed which would authorize a carrier, receiving freight from another carrier, to pay all charges which had accumulated. Hayden v. Grillo, 42 Mo. App. 5; Brown v. Strimple, 21 Mo. App. 338; Bank v. Slater,

166 Mo. 637; Martin v. Ashland Mills, 49 Mo. App. 31. (5) If Clark was the agent of defendant, and the plaintiff knew of such agency, and voluntarily looked to Clark for the payment of the bills; charged them on its books against Clark; rendered statements against Clark, then it elected to hold Clark, and cannot now hold the defendant. Ames Packing Co. v. Tucker, 8 Mo. App. 95; McCullough v. Thompson, 45 N. Y. Sup. Ct. 445; Schefflin v. Dessar, 20 Mo. App. 573; Sessums v. Block, 40 Mo. App. 571; Buck v. Amidon, 4 Daly 126; Davis v. McKinney, 46 Tenn. 15; Watts v. Thayer, 56 Ill. App. 282; Bate v. Burr (Del.), 4 Har. 130; Patterson v. Gaudasequi, 15 East 62; Taintor v. Prentegrast (N. Y.), 3 Hill 72. (a) This rule becomes absolute where the principal has settled with the agent, relying upon such dealings between the agent and the third party. To allow the creditor in such case to proceed against the principal, might have the effect of compelling the principal to pay the debt twice. Scheflin v. Dessor, 20 Mo. App. 573; Mechem on Agency, par. 698. (6) The petition in this case sets out a direct promise "to repay to the plaintiff all sums of money so paid out by the plaintiff for said freight charges from said city of Mobile to said city of East St. Louis, and to said various points to which said cars were forwarded," and there is attached to the petition a paper called an account or bill of particulars, which purports to show the items agreed to be paid. Under such allegations evidence of the reasonableness of the amount paid is not admissible. Schwaner v. Boiler Co., 19 Mo. App. 534.

*Robert & Robert* for respondent.

(1) The motion to elect came too late. Defendant having filed an answer, all formal defects, if any, in the petition were waived. Jordan v. Transit Co., 202 Mo. 426; White v. Railroad, 202 Mo. 561; Bank v. Dillon, 75 Mo. 380; House v. Lowell, 45 Mo. 381; Wilson v. Railroad, 67 Mo. App. 443; Pancoast v. Gas Fixture Co., 60

Mo. App. 57. (2) The petition was based upon an account and the service was a proper subject of account, and it was shown that an account was kept. Nedvidek v. Meyer, 46 Mo. 600; Gibson v. Jenkins, 97 Mo. App. 27; Turgeon v. Cote, 88 Me. 108; McMaster v. Booth, 4 How. Pr. 427; Dowdney v. Volkening, 37 N. Y. Sup. Ct. 313; Gale v. Drake, 51 N. H. 78; Barkley v. Rensselaer, 27 Hun 515. (3) The appellant cannot here complain that the account did not show the amounts paid each carrier. If this was necessary, its remedy was by motion. White v. Railroad, 202 Mo. 561; cases cited under Point I. (4) (a) The knowledge of the custom of a carrier, receiving freight from another carrier, to pay all charges which had accumulated, was brought home to the defendant. It had uniformly remitted to Clark, its agent, for all such charges. (b) Clark's authority, as agent of the defendant, to reconsign its cars, carried with it all authority to do all the things necessary to perform that duty, and therefore he had authority to bind the defendant on a contract for freight charges. Sparks v. Trans. Co., 104 Mo. 539; Edwards v. Thomas, 66 Mo. 468; Franklin v. Ins. Co., 52 Mo. 461; Meier v. Proctor & Gamble Co., 81 Mo. App. 418; Mobry v. Shoe Co., 73 Mo. App. 1. (5) The plaintiff did not look to Clark for payment. There is no evidence that it looked to anyone else than the defendant. Besides this was submitted to the jury on the first instruction and decided against the appellant. (6) Upon the account it was proper to show that the freight rates were the usual and proper charges as a railroad must serve all alike. Wyman v. Ferguson, 66 Mo. App. 525.

GOODE, J.—Plaintiff is a railway company operating through the State of Illinois. Defendant is a corporation under the laws of the State of Alabama, and doing business in the city of Mobile. This action was by attachment against defendant as a foreign corporation, the object being to recover the amount of an account alleged to have accrued in plaintiff's favor against de-

fendant from the following facts: Defendant sold lum-
ber by the carload to different buyers in the northern
and eastern States, would ship over the Mobile & Ohio
Railroad to East St. Louis, consigned to itself, and at
East St. Louis would reship to the buyers at various
points; or, as the plan of business was called, would
reconsign the carloads of lumber at East St. Louis. An
arrangement was made between Luce, defendant's presi-
dent, and a man named Charles T. Clark, by which the
latter was to reconsign the cars. Clark was agent of the
Waters-Pierce Oil Company at East St. Louis, but he
also attended to reconsignments of cars at said point,
which is a railroad center, for different persons. The
arrangement between defendant and Clark was made in
February, 1904, as is proved not only by Clark's testi-
mony, but by letters written by defendant. It continued
until November 18, 1904, when defendant revoked
Clark's agency and wrote a letter to the Mobile & Ohio
Company at East St. Louis, saying he had no authority
to handle defendant's business, as previously to Feb-
ruary 5th defendant had written a letter to said com-
pany telling it "to take instructions from Mr. C. T.
Clark for all shipments consigned to us at East St.
Louis." Most of the correspondence between Clark and
defendant had been lost and could not be introduced at
the trial, but part was, including the following letter re-
lating to one of the cars in controversy:

"October 11, 1904.

"Mr. C. T. Clark,
"P. O. Box, No. 597, St. Louis, Mo.
     "Dear Sir:—Reconsignment M. & O. 8435.
     "Please reconsign the above car to Freaser Bros.
& Van Hoff, Indianapolis, Ind., sending us bill of lading
as soon as possible.
                    "Very truly,
          "BAY SHORE LUMBER COMPANY."

Clark made an arrangement with Charles Calligan, freight agent of plaintiff, for the reshipment or reconsignment over plaintiff's lines to the various destinations, of defendant's cars of lumber which came to East St. Louis. This arrangement was for plaintiff company to pay the freight charges of the Mobile & Ohio Company for transportation from Mobile to East St. Louis, pay the freight charges of any other carrier to which plaintiff might deliver the car to be carried to destination, and collect from Clark as defendant's agent those two advancements made by plaintiff, as well as its own charge for transporting from East St. Louis over its line to a connecting carrier. Clark's testimony goes to prove the habit was for a bill for these charges and payments to be turned over to him by plaintiff after 18 or 20 cars had been handled, and a few days later he would pay the bill; thus reimbursing plaintiff what it was out and compensating it for what hauling it had done. Clark would transmit a statement of what he paid to defendant at Mobile, and to use his expression, defendant "billed on me for both charges into East St. Louis and beyond East St. Louis." He testified this course had been followed from February to October without objection from defendant. No disagreement arose about the settlement of charges incident to reconsignments of lumber before October 18th. From that date until November 2d, defendant shipped fifteen cars to East St. Louis, and Clark reconsigned them over plaintiff's line, plaintiff paying the Mobile and Ohio Company's back freight charges, also the charges of any connecting carriers who were used in getting the cars to destination. For these payments and its own charges on the cars, amounting to $1,727.01, it never has been paid, and plaintiff prays judgment for said sum. The evidence on the point, though rather uncertain, inclines to prove defendant remitted the money to pay these bills to Clark, but he did not pay them. Clark handled reconsignments over plaintiff's line for other persons than defendant,

and was allowed a commission by plaintiff for cars reconsigned to three points, Chicago and Hegewich, Illinois, and Butler, Pennsylvania. The commission allowed him for reshipments to those three points was the entire compensation he received from plaintiff for business he turned over to it, plaintiff allowing him nothing for reconsignments to other points, but intending the commission he earned on the shipments to said three should be the reward for all the business he gave it. None of the cars involved in the present record were sent to those points, and hence Clark got nothing from plaintiff for them. Though much is said in the briefs about his receiving a commission from plaintiff, the circumstance is not as important as, at first glance, it looks, because the testimony shows defendant knew all about the arrangement, had stipulated with Clark defendant should have seventy-five per cent of the commission Clark received from plaintiff on any of defendant's cars, and in settling with Clark from time to time, this sum was deducted from defendant's remittances to him. The point is only relevant to defendant's contention that Clark was not its agent, but plaintiff's. After the trial had begun before a jury, defendant's counsel objected to the reception of any evidence, because the plaintiff had stated fifteen causes of action in one count of the petition, and because, further, the petition and the bill of particulars attached to it, did not distinguish the amount paid by plaintiff to the initial carrier, the Mobile & Ohio Company, the amount paid the final carriers, and what was earned by plaintiff in hauling over its own line. The objection was overruled and an exception reserved. At plaintiff's instance the court instructed the jury if they believed Clark was employed by defendant to reconsign cars of lumber arriving in East St. Louis consigned to defendant's order, and defendant, through said Clark, consigned the cars in controversy over plaintiff's road, instructed plaintiff to pay the freight charges to the point of destination, and plaintiff paid

them and forwarded the cars over its own road and connecting roads·to destination, the verdict should be for plaintiff for such sum as the evidence showed would cover the reasonable freight charges from Mobile to East St. Louis, for the hauling of said cars by plaintiff over its own line, and for the hauling over connecting railroads to the point of destination, provided plaintiff had paid said other carriers who handled the cars. An exception was saved to that charge, which was embodied in two instructions. One was also saved to the ruling of the court in refusing this instruction requested by defendant: "The court instructs the jury if they believe from the evidence that Charles T. Clark was the agent of the plaintiff, in the transactions set out herein, and if you further believe from the evidence that the defendant paid the charges here sued on to Clark for the plaintiff, then you will find a verdict for the defendant. And the court further instructs the jury that it devolves upon the plaintiff to prove such agency by a preponderance of the evidence."

1. We incline to view this action as one on a running account for sums paid and charged by plaintiff for transporting the fifteen cars of lumber in dispute, and hence properly embraced in one count. We will not go into the question because, even if the charges on each car constitute a distinct cause of action which should have been set out in a separate count, the different causes would be perfectly consistent with each other, and under the authority of decisions of the Supreme Court, the oral motion after the trial began, to compel plaintiff to elect on which count it would proceed, was made out of time and properly overruled. [Jordan v. Transit Co., 202 Mo. 418; White v. Railroad, Id. 539, 561.]

2. As to the objection the petition did not say what parts of the sum demanded for each car were earned by the different carriers, we answer that defendant, if

it desired to know those facts, should have moved to have the petition made more certain and particular.

3.   Complaint is made the court let in evidence of a custom prevailing among railroad companies when freight is reconsigned at a railroad center, for the company which took charge of it there to pay back freight charges and the charges of any third or more carriers which might take part in hauling to destination. The argument is, that as this action is on an express promise, no custom being alleged, the evidence was incompetent. The evidence sought was not elicited and hence the complaint is without merit. The record shows questions directed to proving the custom were asked; but the two witnesses who were interrogated about it, testified there was no such custom, and the receiving carrier would be governed by the instructions of the shipper, and the only custom was to follow instructions. The main witness said the party who reconsigned invariably told what he wanted done about the advance charges— whether they should follow the car or be collected from him. "In the absence of any instructions I would call him up (i. e. the shipper); he tells you to collect at the end or prepay," said the witness. Moreover, it was conclusively shown Clark had authority to direct plaintiff to pay back freight charges, and the charges of the final carrier, for this course was pursued from the time his agency began and defendant did not object to it.

4.   Plaintiff is said to be precluded from recovering from defendant because, though it knew of Clark's agency, he was looked to for payment of plaintiff's bills, they were charged to him on the books, statements were rendered to him, and hence having elected to hold him, plaintiff cannot now hold defendant as the principal. Suffice to say in all plaintiff's dealings with Clark, he was dealt with as agent of defendant and bills were rendered to him in that capacity. There is not a trace of evidence in the record tending to prove plaintiff elected to look to Clark for payment instead of defend-

ant. The authorities cited on the proposition held only that where a party had dealt with an agent, knowing he was such, and afterwards accepted the agent's note for a debt growing out of the dealings, or took some other step indicating an election to hold the agent instead of the principal for the demand, the latter would be exonerated; at least if he had settled with the agent believing the creditors looked to the latter. [Schepflin v. Dessar, 20 Mo. App. 569; Sessions v. Block, 40 Mo. App. 569, 572; Mechem, Agency, sec. 9698.] The doctrine invoked is not relevant to the facts in the record.

5. Complaint is made because the court allowed plaintiff to prove the charges paid to other carriers and demanded for its own work, were reasonable. This objection is based on the idea that the petition declares on defendant's express promise to pay the charges demanded in the petition and not to pay reasonable charges. The petition says, in effect, when carloads of lumber arrived at East St. Louis, defendant requested plaintiff to forward them over its railroad and connecting railroads to various points in the United States, directed plaintiff to pay the freight charges to said points and then and there promised to repay plaintiff all sums of money so paid out by it. Those averments cannot fairly be held to charge defendant agreed to pay plaintiff whatever plaintiff might ask for freight charges, no matter how exorbitant they were; but only to pay reasonable charges. The contract declared on was express in respect of a promise by defendant to pay plaintiff, but not as to the amounts of the charges to be paid. In agreements of that character the promise is to pay what is reasonable. [15 Ency. Law (2 Ed.), p. 1082 and notes.] We hold plaintiff, in order to recover, was bound not only to prove charges accrued and were paid and earned by it, but also they were reasonable.

6. The court was right in refusing the instruction asked by defendant, because it sought to impose on plaintiff the burden of proving Clark was plaintiff's

agent; a proposition opposed to the entire theory of plaintiff's case as all the evidence it introduced sought to prove Clark was defendant's agent and the recovery depended on this fact being proved.

No error being found in the record, the judgment will be affirmed. All concur.